UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY R. LOVER,

                Plaintiff,

        v.

DISTRICT OF COLUMBIA, et al.,

                Defendants.

Civil Action 06-01872 (HHK)

**MEMORANDUM OPINION AND ORDER**

Gary R. Lover brings this action against the District of Columbia ("the District"), former Metropolitan Police Department ("MPD") Chief Charles H. Ramsey ("Chief Ramsey"), MPD Officer Steven A. Manley ("Officer Manley"), and other named and unnamed MPD Officers. This suit arises out of an incident in which Officer Manley allegedly detained Lover without probable cause and conducted a cavity search of Lover despite his objection to such a search. Maintaining that his constitutional rights were violated, Lover asserts claims under § 1983 of Title 42 of the United States Code and common-law claims of assault, battery, conspiracy, negligence, false imprisonment, negligent training and supervision, and intentional infliction of emotional distress.[1]

Before the court is a motion by the District and Chief Ramsey (hereinafter "defendants")

---

[1] Although the amended complaint also lists *respondeat superior* as an independent cause of action, it is well established that "*respondeat superior* is not itself a cause of action or a cognizable legal claim." *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 43 (D.D.C. 2007). The court, therefore, construes the *respondeat superior* "claim" as reasserting the underlying common-law claims of assault, battery, conspiracy, negligence, false imprisonment, negligent training and supervision, and intentional infliction of emotional distress against the District pursuant to a theory of *respondeat superior*.

to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) [#9]. Upon consideration of this motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted in part and denied in part.

## I.  BACKGROUND

According to the amended complaint, on September 2, 2006, Lover was standing outside the apartment building in which he lived with several other people when he was approached by numerous MPD officers, including Officer Manley. Officer Manley instructed Lover to place his hands on the building whereupon Officer Manley proceeded to search him. After this initial search, Officer Manley forcefully led Lover into the apartment building and, despite Lover's initial and continued objection to any invasive search, Officer Manley "digitially penetrate[d] the anus of [] Lover for a significant period of time." Am. Compl. ¶¶ 18–19. This invasive search was "conducted in a public area and in the presence of other MPD officers." *Id.* ¶ 21. The search was conducted without probable cause to believe that Lover was engaged in any illegal activity and yielded no contraband. Lover was neither taken into custody nor arrested.

## II.  ANALYSIS

### A.     **Standard of Review**

A court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if it appears, assuming the alleged facts to be true and drawing all inferences in the plaintiff's favor, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997), *cert. denied*, 531 U.S. 1147 (2001); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). All that the Federal Rules require of a complaint is that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). According to Rule 8(e)(1), "[e]ach averment of a

pleading shall be simple, concise, and direct," and Rule 8(f) instructs courts to construe "[a]ll pleadings . . . to do substantive justice." "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1969 (2007).

When ruling on a motion to dismiss, the court must liberally construe the complaint. *Kowal*, 16 F.3d at 1276. The plaintiff's factual allegations must be presumed true and he must be given every favorable inference that may be drawn from the allegations of fact liberally construed in his favor. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "However, the court need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.[2]

**B.    Section 1983 Claims**

Lover brings his federal claims under § 1983 of Title 42 of the United States Code, which creates a cause of action against individuals who have violated "rights, privileges, or immunities secured by the Constitution and laws" while acting under color of state law. 42 U.S.C. § 1983. According to Lover, Officer Manley's "act of digitally penetrating the anus and otherwise

---

[2] Defendants assert that the court should treat their motion as conceded under LCvR 7(b) because Lover's opposition was not filed within 11 days after he was served with the motion. The Rule states that if an opposition memorandum is not filed within eleven days after the underlying motion was served, "the court *may* treat the motion as conceded." LCvR 7(b) (emphasis added). Exercising its discretion, the court declines to treat the motion as conceded. *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 577–78 (D.C. Cir. 1997) (acknowledging the district court's authority not to exercise its discretion to treat motion as conceded, but rather to address the motion on the merits).

injuring [] Lover, and other unnamed MPD Officer's acts of providing support and assistance to Officer Manley and failing to protect [] Lover, directly and proximately subjected [] Lover to the deprivation of his rights" — specifically, his Fourth Amendment right to be secure in his person from unreasonable searches and seizures, his Fifth Amendment due process right, and his First Amendment right to peaceably assemble. Am. Compl. ¶¶ 24–32. Lover maintains that, at all relevant times, the Officers "wore the apparel of the District of Columbia MPD; used the resources and property of the MPD; were on active duty as Officers of the MPD; acted under their authority as officers of the MPD; and acted under the color of law, statute, ordinance, regulation, custom and usage of the District of Columbia." Am. Compl. ¶ 29.

The District and Chief Ramsey move to dismiss Lover's claims on several grounds, each of which will be addressed in turn.

### 1. The District

Defendants assert that Lover's § 1983 claim against the District "must fail because [Lover] has failed to allege facts that indicate that his injury was caused by a policy or custom that a policymaker of the District approved." Mem. in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 5. The court is not persuaded.

In *Monell v. New York City Department of Social Services*, the Supreme Court held that Congress intended municipalities and other local government entities to be included among those "persons" to whom § 1983 applies.[3] 436 U.S. 658, 690 (1978). Under *Monell*, a municipality may not be held liable under § 1983 unless "a government's policy or custom, whether made by

---

[3] "The District of Columbia is a municipality for purpose of § 1983." *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 425 (D.C. Cir. 2005) (citing *Brown v. United States*, 742 F.2d 1498, 1500 n.2 (D.C. Cir. 1984)).

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. However, a municipality may not be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691. In subsequent cases, the Supreme Court and the D.C. Circuit have held that a city's inaction, including its failure to train or supervise its employees adequately, constitutes a "policy or custom" under *Monell* when it can be said that the failure amounts to "deliberate indifference towards the constitutional rights of persons in its domain." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989) (recognizing municipal liability under § 1983 for failure to train); *see Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (recognizing municipal liability under § 1983 for failure to train or supervise); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (recognizing that "inaction giving rise to or endorsing a custom" can result in municipal liability under § 1983).

In *Leatherman*, the Supreme Court held that plaintiffs alleging municipal liability under § 1983 are held to the liberal requirements of notice pleading established by the Federal Rules, not a heightened pleading standard, 507 U.S. at 167–69, and, in *Atchinson v. District of Columbia*, the D.C. Circuit held that a complaint alleging municipal liability under § 1983 will survive a motion to dismiss if it contains "*some factual basis* for the allegation of a municipal policy or custom" that caused the plaintiff's injury. 73 F.3d 418, 422 (D.C. Cir. 1996) (emphasis added). Although in *Atchinson* the "complaint failed to identify a specific custom, policy statement or procedure that caused [the plaintiff's] injuries," the court held that dismissal was improper because the complaint alleged "both a failure to train and an unusually serious instance of misconduct that, on its face, raise[d] doubts about a municipality's training policies."[4]

---

[4] Defendants assert that Lover's amended complaint "cannot support an inference of a municipal policy or custom" because Lover alleges "only the single incident on September 2,

*Id.* at 422–23.

Here, Lover's amended complaint alleges that the MPD Officers "acted under the color of law, statute, ordinance, regulation, custom and usage of the District of Columbia" when they detained him and subjected him to a cavity search absent probable cause to believe that he was engaged in any illegal activity. Am. Compl. ¶¶ 18–23, 29. Like the complaint in *Atchinson*, Lover does not specify the unconstitutional policy, custom, or procedure responsible for his injuries. *See* 73 F.3d at 420. The court, however, concludes that Lover's complaint satisfies *Atchinson's* pleading requirement by providing "some factual basis" for his assertion that an unconstitutional policy or custom existed and was causally related to his his injury. *See id.* at 422. Lover's amended complaint alleges a failure to train and supervise and his allegation that he was detained and subjected to a cavity search absent probable cause — which is assumed to be true for purposes of this motion — is an unusually serious instance of misconduct that raises doubts about the District's training policies.[5] Fairly read, therefore, Lover's amended complaint meets *Monell's* requirement of alleging an action that was pursued pursuant to a municipal "policy or custom." *See* 436 U.S. at 691; *see also Atchinson*, 73 F.3d at 422–23. Accordingly,

---

2006." Defs.' Mem. at 6 n.4. In support of this proposition, defendants cite *Arnold v. Moore*, in which this court granted a motion to dismiss on the grounds that "[a]n allegation of a one-time constitutional violation is insufficient to establish the existence of a policy giving rise to governmental liability, absent proof that the incident was caused by an existing unconstitutional municipal policy." 980 F. Supp. 28, 36 (D.D.C. 1997). Defendants, however, read *Arnold* broadly and inconsistently with *Atchinson*. *See* 73 F.3d at 423 ("Atchinson's complaint is adequate even though it alleges only one instance of unconstitutional conduct . . . . [§] 1983 does not require a plaintiff even to *prove* multiple instances of misconduct.") (emphasis in original).

[5] Defendants assert that Lover's negligent training and supervision claim is a common-law claim, and not a constitutional claim, "because it references a duty, breach of duty, proximate cause, etc." Defs.' Mem. at 6 n.4. A negligent training and supervision claim, however, can simultaneously state valid common-law and § 1983 claims. *See Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 274–75 (D.D.C. 2006).

Lover's § 1983 claim against the District survives defendants' motion to dismiss.

### 2. Chief Ramsey

Because Lover has brought this action against Chief Ramsey in both his official and individual capacities, the court must distinguish the two because they are, in effect, different claims. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974)), while individual-capacity suits "seek to impose personal liability upon a governmental official for actions he takes under color of state law" (quoting *Monell*, 436 U.S. at 690 n.55)).

#### i. *Official Capacity*

"When sued in their official capacities, government officials are not personally liable for damages." *Atchinson*, 73 F.3d at 424 (citing *Kentucky v. Graham*, 473 U.S. at 166). "A section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself." *Id.; see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that an official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself"). "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) (citations and internal quotation marks omitted).

Here, the amended complaint names the District as a defendant and states that the District "is being sued for the unlawful actions of the MPD." Am. Compl. ¶ 14. The amended complaint also provides that Chief Ramsey is being sued "in both his individual and official capacities." *Id.* ¶ 12. The § 1983 claims against Chief Ramsey in his official capacity are therefore equivalent to the § 1983 claims against the District and, accordingly, must be dismissed.

### ii.     *Individual Capacity*

Defendants make three arguments in support of their motion to dismiss Chief Ramsey in his individual capacity: first, defendants assert that the amended complaint is "attempting to hold Chief Ramsey vicariously liable for the alleged unconstitutional actions of the other police officers" despite the fact that under § 1983 "individual government employees cannot be held vicariously liable for the unconstitutional actions of others," Defs.' Mem. at 7; second, defendants maintain that "[a]ny individual capacity suit against Chief Ramsey must also be dismissed because there are no allegations of any wrongdoing against him," *id.* at 8; and third, defendants argue that Chief Ramsey is entitled to qualified immunity. *Id.* The court initially will address defendants' first two arguments and will then turn to the question of qualified immunity.

Defendants correctly point out that any attempt to hold Chief Ramsey liable for the actions of the other MPD officers on a theory of vicarious liability or *respondeat superior* is not tenable. *See Graham v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989) (citation omitted). However, if Lover can establish "sufficient personal involvement" on the part of Chief Ramsey, an individual-capacity suit is sustainable. *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994).

The Supreme Court has recognized that government officials may be liable "for damages in their personal capacities . . . even when the conduct in question relates to their official duties."

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). When § 1983 claims are against a defendant in his or her individual capacity, the plaintiff must show that the defendant was personally and directly involved in the wrongful acts. *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993). However, "direct participation by a defendant is not necessary . . . if the defendant set in motion a series of events that the defendant knew or should have known would cause others to deprive the plaintiff of her constitutional rights." *Conner v. Reinhard*, 847 F.2d 384, 369–97 (7th Cir. 1988) (citations omitted). A supervisor can be liable in his individual capacity "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotation marks, citations, and alterations omitted). As held by the D.C. Circuit, "it is possible for a section 1983 plaintiff to satisfy Rule 8 by alleging both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies." *Atchinson*, 73 F.3d at 422–23; *see Hardeman v. Clark*, 593 F. Supp. 1285, 1287–88 (D.D.C. 1984) (holding that the plaintiff's allegations against the District of Columbia Chief of Police were sufficiently pled to survive a motion to dismiss because the allegations of the Chief's deliberate indifference to the MPD's policy or practice of issuing blackjacks to its officers with inadequate supervision or training in the use of the weapons was not based on a theory of *respondeat superior*; rather, it alleged that the Chief's actions "resulted in the deprivation of plaintiff's constitutional rights").

      Here, defendants argue that the amended complaint's § 1983 count does not explicitly

implicate Chief Ramsey. *See* Defs.' Mem. at 8. However, the amended complaint's eighth cause of action is against Chief Ramsey for negligent training and supervision, and alleges that "Chief Ramsey, recklessly and without regard for the rights of others, breached [his] duty to properly train, supervise, investigate and correct the improper actions of [the] employee Police Offers [and that] Chief Ramsey's disregard for the rights of others . . . was the direct and proximate cause of the substantial injuries [] Lover sustained." Am. Compl. ¶¶ 64–65. In a case in which a similar issue arose, this court held that a complaint's claim for negligent training and supervision against Chief Ramsey provided the defendants with sufficient notice of a § 1983 claim against Chief Ramsey, despite the fact that the "[§] 1983 claims were alleged separate and apart from [the] negligent training and supervision claim." *Kivanc*, 407 F. Supp. 2d at 274. In *Kivanc*, Judge Friedman reasoned that the complaint, "when read as a whole under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure, provide[d] defendants with sufficient notice of plaintiff's claim." *Id.* Here too, when read liberally in Lover's favor, the amended complaint provides defendants with sufficient notice of Lover's claim against Chief Ramsey in his individual capacity because Lover has alleged both a failure to train and an unusually serious instance of misconduct that raises doubts about the municipality's training policies. *See Atchinson*, 73 F.3d at 422–23.

    The court now turns to the question of whether Chief Ramsey is entitled to qualified immunity. "When a plaintiff sues a government agent in his individual capacity and the defense of qualified immunity is raised, that plaintiff must overcome that defense in order to survive a Rule 12(b)(6) motion to dismiss." *Komongnan v. U.S. Marshals Serv.*, 471 F. Supp. 2d 1, 6 (D.D.C. 2006) (citing *Jackson v. Bush*, 448 F. Supp. 2d 198, 2000 (D.D.C. 2006)). Qualified

immunity protects "government officials performing discretionary functions" from individual liability § 1983 actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has emphasized that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson*, 483 U.S. at 646 n.6.

To determine whether an individual defendant is entitled to qualified immunity, the court undertakes a two-part inquiry. It "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). If the court finds such a violation, it must then "proceed to determine whether that right was clearly established at the time of the alleged violations." *Id.* In addressing this second question, "courts must frame their inquiry at the right 'level of generality.'" *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006) (quoting *Anderson*, 483 U.S. at 639). As explained in an example given by the D.C. Circuit, "it is not enough to say that it is clearly established that police officers may not subject individuals to unreasonable searches and seizures. Rather, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson*, 483 U.S. at 640). Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

With respect to the first question, when all factual inferences are drawn in his favor, Lover has alleged the deprivation of an actual constitutional right, including, but not limited to,

his Fourth Amendment right to be free from unreasonable searches and seizures. *See* Am. Compl. ¶ 28. The essence of Lover's claim is that he was detained and subjected to a cavity search absent probable cause to believe that he was engaged in any illegal activity. *Id.* ¶¶ 18–23. It is firmly established that a strip search, without probable cause, can violate the Fourth Amendment, *see, e.g.*, *Tatum v. Morton*, 562 F.2d 1279, 1284–85 (D.C. Cir. 1977), and, as discussed above, a failure to train and an unusually serious instance of misconduct that raises doubts about a municipality's training policies can support a finding of individual liability for the deprivation of a constitutional right under § 1983. *See Atchinson*, 73 F.3d at 422–23.

The second question, however, turns on the extent of Chief Ramsey's knowledge of the policies and/or practices that resulted in the deprivation of Lover's rights. Merely being the superior of the MPD officer-defendants is not enough to attach liability to Chief Ramsey. *See Int'l Action Ctr. v. United States*, 365 F.3d 20, 27–28 (D.C. Cir. 2004) ("A supervisor who merely fails to detect and prevent a subordinate's misconduct . . . cannot be liable for that misconduct"). However, supervisors can be liable for a subordinate's misconduct if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). Assuming the truth of Lover's allegations, Chief Ramsey's failure to "properly train, supervise, investigate and correct the improper actions" of the MPD officer-defendants supports the conclusion that Chief Ramsey knew about the conduct and facilitated it in some way. *See* Am. Compl. ¶ 64; *see also Int'l Action Ctr.*, 365 F.3d at 27. Accordingly, the court finds that Chief Ramsey's qualified immunity defense, insofar as it is raised in support of defendants' motion to dismiss, must fail.

After giving Lover the benefit of all justifiable inferences, the court concludes that he has

alleged sufficient personal involvement on the part of Chief Ramsey to sustain a § 1983 action against him in his individual capacity, and, because Chief Ramsey's qualified immunity defense fails at this stage, the court denies the motion to dismiss.

      **C.**     **Common-Law Claims Against Chief Ramsey**

Lover also brings common-law claims of assault, battery, conspiracy, negligence, false imprisonment, negligent training and supervision, and intentional infliction of emotional distress. Defendants assert that "[w]ith the exception of the negligent training and supervision claim, all of the common-law claims made against Chief Ramsey must fail because they fail to allege any wrongdoing by Chief Ramsey." Defs.' Mem. at 11. Because Lover does not respond to this argument, the court treats the motion as conceded as to all common-law claims against Chief Ramsey, with the exception of negligent training and supervision.

Chief Ramsey also moves to dismiss the negligent training and supervision claim against him on the grounds that it is duplicative of Lover's negligent training and supervision claims against the District. Defs.' Mem. at 11. Again, Lover makes no response to this argument. Chief Ramsey's argument, however, ignores the proposition that generally it is only when a claim is brought against a municipal employee in his official capacity that it is found to be duplicative of a claim against the municipality. *See DeStiso v. Town of Wolcott*, 2006 WL 3355174, at *8 (D. Conn. Nov. 17, 2006) (finding that because the plaintiff's negligence count named the defendant in his individual capacity, it was not duplicative of the claim against the municipality); *see also Pugh v. Socialist People's Libyan Arab Jamahiriya*, 2006 WL 2384915, at *6 (D.D.C. May 11, 2006) (rejecting the assertion that the court must dismiss a suit against Libya in order to hold the individual defendants liable in their personal capacities). Here, the amended

complaint's eighth cause of action for negligent training and supervision contains specific allegations that Chief Ramsey was "under a duty to properly train, supervise, investigate, and correct improper actions of MPD Officers" and that he "recklessly and without regard for the rights of others, breached [that] duty." Am. Compl. ¶¶ 63–64. Defendants point to no reason — and the court sees no reason — to construe the negligent training and supervision claim as against Chief Ramsey only in his official capacity. Therefore, the court denies Chief Ramsey's motion to dismiss the claim.

### III.  CONCLUSION

For reasons articulated in this memorandum, and in accordance with the foregoing analysis, it is this 23rd day of July, 2007,  hereby

**ORDERED** that defendants' motion for to dismiss [#9] is **GRANTED** in part and **DENIED** in part as follows:

1. The motion to dismiss is **GRANTED** with respect to Lover's § 1983 claim against Chief Ramsey in his official capacity and with respect to Lover's common-law claims of assault, battery, conspiracy, negligence, false imprisonment, and intentional infliction of emotional distress against Chief Ramsey.

2. The motion to dismiss is **DENIED** with respect to Lover's § 1983 claim against the District; Lover's § 1983 claim against Chief Ramsey in his individual capacity; and Lover's common-law claim of negligent training and supervision against Chief Ramsey.[6]

---

[6] The following claims survive this motion:  (1) all claims against the District; (2) the individual-capacity § 1983 claim against Chief Ramsey; (3) the negligent training and supervision claim against both Chief Ramsey and the District; and (4) all claims against the defendants who did not join the motion to dismiss.

                                                Henry H. Kennedy, Jr.
                                                United States District Judge