UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GARY R. LOVER,**<br><br>    Plaintiff,<br><br>    v.<br><br>**DISTRICT OF COLUMBIA,** *et al*,<br><br>    Defendants. | Civil Action No. 06-1872 (HHK)(AK) |

**MEMORANDUM OPINION**[1]

Pending before the Court are Plaintiff Gary R. Lover's Motion for Leave to File Second Amended Complaint [26], Defendants' Opposition [27], and Plaintiff's Reply [31].

**I.    Background**

    A.    Procedural History

On November 2, 2006, Plaintiff Gary R. Lover ("Lover") brought suit against the District of Columbia, Chief Charles H. Ramsey, five named Metropolitan Police Department ("MPD") Officers, and other unnamed officers alleging violations of 42 U.S.C. § 1983 and common law tort claims. (*See* Compl. [1].)[2] Lover subsequently filed an Amended Complaint to correct the

---

[1] United States District Judge Henry H. Kennedy referred this matter to the undersigned Magistrate Judge for resolution of Plaintiff's Motion for Leave to File Second Amended Complaint, pursuant to Local Civil Rule 72.2(a). (*See* Order of Reference [28] dated 12/21/07.)

[2] Judge Kennedy subsequently dismissed Lover's § 1983 claim against Chief Ramsey in his official capacity and Lover's common law claims of assault, battery, conspiracy, negligence, false imprisonment, and intentional infliction of emotional distress against Chief Ramsey. (Mem. Op. & Order [22] dated 7/23/07 at 14.) All other claims survived the Motion to Dismiss. (*Id.*)

name of one of the defendant officers, Steven A. Manley. (*See* Am. Compl. [3].) On December 5, 2007, Lover moved to file a Second Amended Complaint to add five plaintiffs who allegedly suffered "the same or substantially similar constitutional and common law violations by the defendants as" Lover. (Pl.'s Mot. [26] at 1.) At the request of Plaintiff's counsel, the Court heard argument in this matter at a hearing on January 31, 2008.

B.   Claims

Lover's claims, and those of the five proposed Plaintiffs, may be summarized as follows:

1.   *Gary R. Lover*

Lover alleges that on September 2, 2006, MPD officers, including Officer Steven A. Manley, approached him outside of his residence at 225 51st Street, N.E., Washington, D.C. (Am. Compl. ¶¶ 15-16.) Lover further states that Officer Manley conducted an initial search of Lover outside of the building, which did not reveal any contraband, and then led him inside where Officer Manley conducted a second search. (*Id*. ¶¶ 17-18.) Lover alleges that during this second search, "over Mr. Lover's initial and continued objection to any invasive search by Officer Manley, the officer did digitally penetrate the anus of Mr. Lover for a significant period of time." (*Id*. ¶ 19.)

Lover brought suit against the District of Columbia, Police Chief Ramsey, Officer Manley, Sergeant Neill, Sergeant Solan, Officer Abdalla, Detective Hendricks, and other unnamed officers. (*Id*. ¶¶6-14.) Lover alleges civil rights claims under § 1983, assault, battery, conspiracy, negligence, false imprisonment, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress. (*See id*. ¶¶ 24-72.)

2.  *Bernard Matthews*

Bernard Matthews ("Mathews") alleges that on November 30, 2006, two male MPD officers approached him outside the Black Super Market at 910 13th Street, N.E., Washington, D.C. (Proposed Second Am. Compl. [26-2] ¶ 21.) Matthews further alleges that one of the officers "pulled [his] pants down, grabbed his testicles and lifted them. After finding nothing, the officer pulled [his] pants back up." (*Id*. ¶ 23.) After a third, female officer approached, the male officer who conducted the first search allegedly pulled Matthews' pants down, searched under his testicles for a second time, and "then went around Matthews and spread Matthews' buttocks and looked between Matthews' buttocks while still in the presence of Female Officer." (*Id*. ¶ 25.) The search yielded contraband that led to Matthews' arrest. (*Id*. ¶ 26.)

Matthews seeks to bring suit against the District of Columbia, Chief Ramsey, and unnamed officers. (*Id*. at 3.) He alleges civil rights claims under § 1983, assault, battery, conspiracy, negligence, false imprisonment, false arrest, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress. (*Id*. ¶¶ 68-134.)


3.  *William Christopher Malloy*

William Christopher Malloy ("Malloy") claims that on February 3, 2007, several MPD officers approached him outside of his residence at 501 50th Place, N.E., Washington, D.C. (*Id*. ¶¶ 29-30.) The officers told Malloy "to put his hands up," before conducting a search of his pockets that yielded no contraband. (*Id*. ¶ 30-31.) Malloy further states:

> Officer Randolph instructed Malloy to turn around and place his hands on a nearby vehicle. Officer Randolph, from behind, reached around Malloy and cut the string on Malloy's sweatpants with a knife he received from Officer Semus

> Bracket. Officer Randolph removed Malloy's underwear, spread his buttocks, and began to probe around between Malloy's buttocks near his anus. After the anal search turned up no contraband, Officer Randolph instructed Malloy to turn around. Officer Randolph then conducted a search around Malloy's testicles, penis and foreskin.

(*Id*. ¶¶ 31-35.) Although this second search also did not yield any contraband, Malloy was arrested and held for two days. (*Id*. ¶ 38.)

Malloy seeks to bring suit against the District of Columbia, Police Chief Lanier, Officers Randolph, Bracket, Brown, and Maulfair, and other unnamed officers. (*Id*. at 3-4.) He alleges civil rights claims under § 1983, assault, battery, conspiracy, negligence, false imprisonment, false arrest, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress. (*Id*. ¶¶ 68-134.)

    4.    *Kevin T. Anderson*

Kevin T. Anderson ("Anderson") alleges that on March 14, 2007, MPD officers stopped him inside Dollar City and Up on 4th and K Streets, N.W., Washington, D.C. and told to come outside. (*Id*. ¶ 41.) Anderson asserts that the "Officers then led [him] to the AA Auto at 311 K Street NW, placed him in handcuffs, and informed him that they were going to conduct a cavity search." (*Id*. ¶ 42.) Anderson further alleges that "the officers lowered [his] pants and underclothes, and while two officers held his buttocks open, Officer Croson ran his hands between Anderson's buttocks where he alleges he found contraband." (*Id*. ¶ 43.)

Anderson seeks to bring suit against the District of Columbia, Chief Lanier, Officers Croson, Nguyen, Sowers and Melby, and other unnamed officers. (*Id*. at 4-5.) He alleges assault, battery conspiracy, negligence, respondeat superior, negligent training and supervision,

and intentional infliction of emotional distress.  (*Id*. ¶¶ 68-134.)

      5.    *Brian Covington*

Brian Covington ("Covington") asserts that on May 10, 2007, MPD officers stopped him near the Dollar City and Up on 4th and K Streets, N.W., Washington, D.C.  (*Id*. ¶ 47.)  The officers conducted an initial search of Covington's pockets, which yielded no contraband, and then led him into AA Auto.  (*Id*. ¶ 48-50.)  Covington alleges that an officer "pulled his pants down, where his buttocks [were] visible to other civilians, and ran his finger between Covington's buttocks where he alleges he found contraband."  (*Id*. ¶ 50.)  Covington further asserts that on May 17, 2007, several MPD officers, including Officer Fanone, approached him at 401 K Street, N.W., Washington, D.C.  (*Id*. ¶ 51.)  Again, the officers allegedly pulled down Covington's pants and conducted multiple searches of his buttocks.  (*Id*. ¶ 52-53.)  During the May 17 encounter with police, Covington's wrist was fractured.  (*Id*. ¶ 54.)

Covington seeks to bring suit against the District of Columbia, Chief Lanier, Officer Fanone, and other unnamed officers.  (*Id*. at 5.)  He alleges assault, battery, conspiracy, negligence, false imprisonment, false arrest, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress.  (*Id*. ¶¶ 68-134.)

      6.    *Derrick Craig*

Derrick Craig ("Craig") claims that on November 7, 2007, several MPD officers approached him on the 5300 block of Clay Terrace, N.E., Washington, D.C.  (*Id*. ¶ 59.)  Officers conducted an initial search, which yielded no contraband, and then "one of the officers grabbed

Craig's pants from behind and ran his hand inside Craig's underclothes through his buttocks toward his anus." (*Id*. ¶ 60.) Craig asserts that the officers then searched his "crotch area." (*Id*. ¶ 62.) Craig seeks to bring claims against these unnamed officers, alleging claims under § 1983, assault, battery, conspiracy, negligence, false imprisonment, respondeat superior, negligent training and supervision, and intentional infliction of emotional distress. (*Id*. ¶¶ 68-134.)

## II.   Legal Standards

Federal Rule of Civil Procedure 15(a) allows a party to amend its complaint "once as a matter of course: (A) before being served with a responsive pleading; or (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar." FED. R. CIV. P. 15(a)(1). All other amendments require the opposing party's consent or leave of court, but Rule 15 provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The decision to grant or deny a party's request to amend its complaint rests within the sound discretion of the District Court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Supreme Court has held that

> in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."

*Id*. The non-moving party generally bears the burden of persuading the court that it would be prejudiced by the amendment or that one of the other factors set forth in *Foman* are present. *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004).

Allowing a plaintiff to amend his complaint may unduly prejudice a defendant if

amendment would delay the litigation or "expand[ ] the allegations beyond the scope of the initial complaint." *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999). Prejudice is likely if "the amended complaint contain[s] 'new complex and serious charges' which would undoubtably require additional discovery for the defendants to rebut." *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993). In *Parish*, the plaintiff initially alleged violations of the Fair Debt Collection Practices Act, but subsequently sought to amend her complaint to include allegations of improper fee splitting and unauthorized practice of law. *Parish*, 195 F.3d at 763. The District Court denied the plaintiff's motion and the Court of Appeals affirmed, holding that "Parish's attempt to broaden the issues would likely require additional discovery and another motion for summary judgment, which would unduly prejudice the defendants and raise concerns about seriatim presentation of facts and issues." *Id*.

If a proposed amendment would add additional parties to the litigation, the Court must also consider Federal Rule of Civil Procedure 20, which governs permissive joinder. *Robinson v. Gillespie*, 219 F.R.D. 179, 188 (D. Kan. 2003). Rule 20(a) provides:

> (1) Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.
>
> (2) Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a). When determining whether claims arise out of the same transaction or occurrence, "a case-by-case approach is generally pursued because no hard and fast rules have

been established." *Baily v. Northern Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).

In *Harris v. Spellman*, 150 F.R.D. 130 (N.D. Ill. 1993), two inmates filed a complaint alleging that correctional officials denied them due process during separate disciplinary hearings. The District Court held that the plaintiffs failed to meet the prerequisites for joinder set forth in Rule 20(a). 150 F.R.D. at 131. Regarding the first prong, the Court stated:

> By no stretch can Harris and Faust contend that their claims stem from "the same transaction or occurrence." They were punished in separate hearings for entirely different incidents of purported misconduct. Nor can they make a rational argument that their punishments resulted from "a series of transactions or occurrences." To be sure, each contests the constitutional adequacy of his disciplinary hearing. But the hearings were conducted by different people at different times to consider different charges. Allegedly similar procedural errors do not convert independent disciplinary hearings into the same "series" of transactions or occurrences in Rule 20(a) terms.

*Id*. at 131-32 (citations omitted). The Court also recognized that the purpose behind Rule 20(a) - promoting judicial economy - "is not served where (as here) the incidents underlying the claims are wholly separate, so as to require entirely different proof." *Id*. at 132. Similarly, in *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000), five current and former employees of Northern Trust Company brought suit alleging racial discrimination. The District Court held that the plaintiffs failed to satisfy the first prong of Rule 20(a) because "each adverse employment decision was an individualized transaction or occurrence." 196 F.R.D. at 516. Specifically, the Court noted that:

> Although each plaintiff worked in the same department of Northern Trust, no single team leader or section manager is implicated in all five of the plaintiffs' claims. Rather, the employment actions complained of were made by different section managers and team leaders at different times over a period of at least fifteen months. . . . Even further, no plaintiff alleges that there was any

relationship between their terminations.

*Id*.

Even if the prerequisites for joinder are satisfied, the court should consider whether there is a risk of jury confusion before the claims of multiple plaintiffs can be tried in a single action. *See, e.g., Disparte v. Corp. Executive Bd.*, 223 F.R.D. 7, 15 (D.D.C. 2004); *Klimaski v. Parexel Int'l*, No. 05-298, 2005 WL 857350, at *2 (E.D. Pa. 2005). In *Disparte*, a discrimination case, the District court found that one of the plaintiffs "worked in a different capacity, in a different department, under different supervisors and offers different evidence of racial discrimination that" that other two plaintiffs. *Id*. at 15. The Court concluded that allowing the plaintiffs to pursue their claims at a joint trial "would prejudice the defendant because there is a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony." *Id*. In *Klimanski*, another discrimination case, the Court did not allow plaintiffs to bring their claims in a single action because it would "bias Defendants generally and deflect the jury's attention from the merits of each individual plaintiff's claim." 2005 WL 857350, at * 5. The Court also raised the possibility "that the evidence admissible for the purposes of one party's claim may not be admissible or relevant for the claims of his co-parties." *Id*.

### III.   **Discussion**

The Court finds that allowing Plaintiff to amend his Complaint to join five additional plaintiffs and ten additional defendants would not be a proper exercise of discretion in light of the facts of this case. First, despite the liberal standard for amendment of pleadings that is

embodied in Rule 15, *Foman* allows a court to deny a party's request to amend his pleadings if amendment would unduly prejudice the other party. *Foman*, 371 U.S. at 182.[3] As discussed above, prejudice may result if the proposed complaint "expand[s] the allegations beyond the scope of the initial complaint." *Parish*, 195 F.3d at 763. The non-moving party may also be prejudiced if the amendment would require the parties to take additional discovery. *Id*. Although all of the proposed plaintiffs are asserting similar claims against members of MPD, the Second Amended Complaint would drastically expand the scope of this litigation and would bring the new defendants into a case that is already more than one year old. Additionally, discovery is currently set to close on March 31, 2008 and Plaintiff's counsel represented at the motions hearing that the parties had yet to conduct depositions with respect to Plaintiffs claims. The joinder of new parties would undoubtedly necessitate further extensions of the discovery deadline and would delay the ultimate resolution of this litigation. Accordingly the Court finds

---

[3] In *Foman*, the Supreme Court also held that futility of amendment is grounds for denying a plaintiff's request to amend its complaint. *Foman*, 371 U.S. at 182. At the motions hearing, Defendants argued that amendment would be futile because the proposed plaintiffs failed to comply with the jurisdictional requirement set forth in D.C. Code § 12-309. This statute provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

In response to this allegation, Plaintiff submitted the notices that were provided to the Mayor of the District of Columbia regarding the claims made by Lover, Malloy, Covington, Craig, and Matthews. (*See* Addendum to Pl.'s Mot. [32].) Plaintiff further informed the Court that "[n]otice was sent to the District of Columbia on Mr. Matthews beyond the time limitation and no notice was sent on Mr. Anderson," but points out that notices were not required for these individuals because "the police reports generated as a result of their arrest contain the information necessary to satisfy" § 12-309. (*Id*. at 1.) However, because the Court has sufficient other grounds for denying Plaintiff's Motion, it need not determine whether joinder of Mr. Matthews and Mr. Anderson would be futile.

that Defendants have met their burden of demonstrating that they would be unduly prejudiced by Plaintiff's proposed Second Amended Complaint. *See Nwachukwu*, 222 F.R.D. at 211.

Second, even if the Court were inclined to exercise the discretion afforded to it by Rule 15, amendment of the Complaint to add the new parties would violate Rule 20 because the claims do not arise from the same transaction, occurrence, or series of transactions or occurrences. Although the claims levied against the District of Columbia, the police chief, and the individual officers are substantially the same for each proposed plaintiff, the first prong of Rule 20 is not satisfied because of the variances in the manner of the alleged searches, the officers allegedly involved, and the timing of each alleged search. In this regard, the present case is analogous to the *Harris* and *Bailey* cases in which the District Court found that joinder was inappropriate even though the plaintiffs were asserting similar violations of their rights. In *Harris*, for example, the District Court reached this conclusion because the plaintiffs "were punished in separate hearings for entirely different incidents of purported misconduct" and because "the hearings were conducted by different people at different times to consider different charges." *Harris*, 150 F.R.D. at 131-32. Similarly in *Bailey*, the Court found that the plaintiffs' claims did not arise from the same transaction or occurrence because "the employment actions complained of were made by different section managers and team leaders at different times over a period of at least fifteen months" and because "no plaintiff alleges that there was any relationship between their terminations." *Bailey*, 196 F.R.D. at 516. As these cases demonstrate, allegedly similar constitutional violations do no convert the plaintiffs' independent searches into the same series of transactions or occurrences that Rule 20 requires.

Finally, joinder would give rise to the risk of jury confusion. In *Disparte*, discussed above, the District Court found a risk of jury confusion because the plaintiffs worked in different positions, in different departments, and under different supervisors and therefore there was "a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony." *Disparte*, 223 F.R.D. at 15. There is also the likelihood that evidence admissible for the purposes of one plaintiff's claim would "not be admissible or relevant for the claims of" the other plaintiffs. *Klimaski*, 2005 WL 857350, at *5. Such problems in the presentation of evidence would prejudice the defendants and prevent the jury from focusing on each plaintiff's individual claim.

### IV.    Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Leave to File Second Amended Complaint. The Court notes, however, that several avenues remain for the proposed plaintiffs to pursue their claims and for Lover to present evidence at his own trial of MPD's customs and accepted practices. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: March 3, 2008                             /s/
                                                 ALAN KAY
                                                 UNITED STATES MAGISTRATE JUDGE